```
                UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                      Alexandria Virginia


CITIGROUP INC.,                    )
DINERS CLUB INTERNATIONAL LTD.     )
                                   )
     Plaintiffs,                   )
                                   )
v.                                 )  Civil Action No. 1:07cv1168
                                   )
NARESH MALIK a/k/a Nick M.,        )
et al.,                            )
                                   )
     Defendants.                   )
```

REPORT AND RECOMMENDATION

This matter came before the Court for a hearing on plaintiffs' Motion for Default Judgment on January 9, 2009. Counsel for plaintiffs was present at the hearing. No representative for defendants appeared. At that time, the undersigned Magistrate Judge took the Motion for Default Judgment under advisement to issue this Report and Recommendation.

I. INTRODUCTION

Plaintiffs Citigroup Inc. ("Citigroup") and Diners Club International Ltd. ("Diners Club") (collectively "plaintiffs") filed a Complaint on November 11, 2007, seeking damages and injunctive relief under the AntiCybersquatting Protection Act, 15 U.S.C. § 1125(d)(1-2) ("ACPA") based on defendants' alleged bad-faith registration and use of domain names wwwcitibankonline.com, citifin.com, and wwwdinersclubus.com (collectively, the

"Infringing Domain Names"). (Compl. 2.)

Plaintiffs have moved for default judgment and permanent injunction against defendants O.P. Monga ("Monga") and Lead Networks Domain Pvt. Ltd. d/b/a www.leadnetworks.com ("Lead Networks") (collectively, "defaulting defendants") and seek an order directing the transfer of the registration of the Infringing Domain Names pursuant to 15 U.S.C. § 1125(d)(1)(C), an award of reasonable attorneys fees pursuant to 15 U.S.C. § 1117(a), and an award of statutory damages pursuant to 15 U.S.C. § 1117(d).

### A. Jurisdiction and Service

This Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1338(b). (Compl. ¶ 13.) This Court also has in rem jurisdiction over the Infringing Domain Names pursuant to Section 43(d)(2)(C) of the Lanham Act, 15 U.S.C. § 1125(d)(2)(C). (Id. ¶ 14.)

This Court has personal jurisdiction over defaulting defendants pursuant to Virginia Code §§ 8.01-328.1(1) and (4) as defaulting defendants have purposefully availed themselves of the benefits of doing business in Virginia and transacted business in Virginia. Specifically, both defaulting defendants registered or cooperated in the use or registration of the Infringing Domain Names, which have been registered through the VeriSign.com registry. (Compl. ¶ 10.) The Verisign registry is located in

Virginia.  (Id.)  Moreover, defaulting defendants have directed their business activities toward Virginia as the websites associated with each of the Infringing Domain Names feature content directed to consumers located in Virginia.  (Id. ¶ 11.)

Defaulting defendants were personally served with copies of the Complaint and their respective Summonses on January 14, 2008.[1]  (Dkt. Nos. 8, 9.)

### B.  Venue

Venue is appropriate in this District under 28 U.S.C. §§ 1391(b), (c), and (d) as well as 15 U.S.C. § 1125(d)(2)(C), because the Infringing Domain Names are located in this District.  (Compl. ¶ 16.)

### C. Grounds for Entry of Default

Plaintiffs filed their Complaint on November 16, 2007.[2]  Defaulting defendants have failed to file an answer, responsive pleading or otherwise respond to the action.  On November 12, 2008, plaintiffs requested the Clerk enter default as to defaulting defendants Monga and Lead Networks.  (Dkt. No. 12.)  The Clerk entered default on November 14, 2008.  (Dkt. No. 14.)

---

[1] Both defaulting defendants were served in Mumbai, India.

[2] In addition to defaulting defendants and the Infringing Domain Names, the Complaint asserts claims against individiual defendants Naresh Malik a/k/a Nick M. ("Malik"), and Vanita Sehgal ("Sehgal"), as well as Watch My Domain, a business organized in India.  (Compl. ¶¶ 5-7.)  Plaintiffs seek default judgment against only defaulting defendants Monga and Lead Networks at this time.  (Mot. for Default J. 1.)

On November 24, 2008, plaintiffs filed their Motion for Default Judgment as to defendants Monga and Lead Networks. (Dkt. No. 17.) When no representative for defaulting defendants appeared at the January 9, 2009 hearing on plaintiffs' Motion for Default Judgment, the Court took the Motion under advisement to issue this Report and Recommendation.

## II. <u>FINDINGS OF FACT</u>

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that plaintiffs have established the following facts.[3]

Plaintiff Citigroup, a New York corporation with principal place of business in New York City, is a world-renowned financial services company. (Plaintiff's Motion for Default Judgment and Permanent Injunction Against Certain Defendants ("Mot. for Default J.") ¶ 11(i); Compl. ¶ 3.) Plaintiff Diners Club, a New York corporation with principal place of business in Chicago, Illinois, is a provider of credit card services to individuals, small business and large corporations. (Mot. for Default J. ¶ 11(ii); Compl. ¶ 4.) Diners Club is a wholly-owned subsidiary of Citigroup. (Compl. ¶ 32.)

Defaulting defendant Lead Networks Domains, a business organized in India, is the registrar for each of the Infringing

---

[3] The pleadings include the Complaint (Dkt. No. 1), plaintiffs' Motion for Default Judgment (Dkt. No. 17), and supporting documents.

Domain Names.  (Id. ¶ 6, Exh. 2.)  Defaulting defendant O.P. Mong, a resident of India, is the registrant of record and user of Infringing Domain Name wwwdinersclubus.com.  (Id. ¶¶ 8-9, Exh. 4.)

### A. Plaintiffs' Marks

Plaintiff Citigroup owns an extensive family of famous trademarks and service marks comprised of, or featuring, the CITI trademark (the "CITI Marks").  (Id. ¶ 17; Mot. for Default J. ¶ 11(i).)  Citigroup registered the CITI Marks in the United States through the United States Patent and Trademark Office ("USPTO").[4]  (Compl. ¶ 18, Exh. 6.)  In addition to rights in the United States, the CITI Marks are applied for or registered in approximately 200 countries throughout the world.  (Id. ¶ 20.)  Citigroup has made extensive use of its Marks throughout the world and, thus, the CITI Marks represent Citigroup's goods and services to the worldwide consuming public.  (Id. ¶¶ 21-22.)  As a result of Citigroup's extensive use and registration of the CITI Marks, the Marks have become famous.  (Id. ¶ 23.)

Diners Club owns a family of famous trademarks and service marks comprised of or featuring the DINERS or DINERS CLUB or DINERS CLUB INTERNATIONAL marks (the "DINERS CLUB Marks").

---

[4] Among other applications and registrations, the mark "CITI", U.S. Reg. No. 1,181,467 (incontestable status), was registered on December 8, 1981 for "financial services including consumer and commercial lending, credit card services, real estate services, investment and advisory services and providing venture capital to others."  (Compl. ¶ 19.)

(Mot. for Default J. ¶ 11(iii); Compl. ¶¶ 24, 26-27.) Diners Club registered the DINERS CLUB Marks in the United States through the USPTO[5] (Compl. ¶ 26.) The credit cards issued by Diners Club under the DINERS CLUB Marks are accepted at 7.6 million locations in more than 200 countries around the world and the Marks are applied for or registered in more than 100 countries. (Id. ¶¶ 25, 28.) Diners Club has made extensive use of its Marks by providing services throughout the United States and around the world. (Id. ¶ 29.) As a result, the DINERS CLUB Marks represent to the worldwide consuming public the goods and services offered by plaintiff Diners Club and the Marks have become famous. (Id. ¶¶ 30-31.)

### B. Defendants' Infringing Domain Names

After plaintiffs used and registered the CITI and DINERS CLUB Marks in the United States, defaulting defendants registered the Infringing Domain Names with VeriSign. (Compl. ¶¶ 33, 42-44.) All of the Infringing Domain Names lead to pay-per-click websites featuring prominent links to plaintiffs' competitors. (Id. ¶ 45.) None of the defendants, including defaulting defendants Monga and Lead Networks, are affiliated

---

[5] Among other applications and registrations, the mark "DINERS CLUB", U.S. Reg. No. 828,013 (incontestable status), was registered on April 25, 1967 for "extension of credit to customers who purchase at subscribing retail establishments and making collections from such customers through a central billing system." (Compl. ¶ 19.)

6

with plaintiffs or authorized to use plaintiffs' Marks.  (Id. ¶ 48.)

In registering the Marks, defaulting defendants had a bad-faith intent to profit from the goodwill and value associated with plaintiffs' Marks.  (Mot. for Default J. ¶ 11(iii); Compl. ¶¶ 33, 56.)  Each of the Infringing Domain Names incorporates at least one of plaintiffs' trademarks in its entirety.  (Mot. for Default J. ¶ 11(iv); Compl. ¶¶ 51, 58.)  Defaulting defendants lacked legitimate intellectual property rights in the Marks as well as the consent of plaintiffs or the approval of any court of law to use plaintiffs' Marks for commercial sales over the Internet or to use or register plaintiffs' Marks.  (Compl. ¶¶ 33, 36.)  Indeed, defaulting defendants' use of plaintiffs' Marks evidences an attempt to confuse plaintiffs' customers and divert consumers looking for information about plaintiffs' services to web pages represented by the Infringing Domain Names.  (Id. ¶ 34.)  The fact that each of the Infringing Domain Names incorporates at least one of plaintiffs' Marks in its entirety causes the Infringing Domain Names to be confusingly similar to and dilutive of plaintiffs' protected Marks.  (Id. ¶¶ 38, 51.)  Such action violates plaintiffs' exclusive trademark and service mark rights in the CITI and DINERS CLUB Marks.  (Id.)

Defaulting defendants' use of the Infringing Domain Names have harmed, and will continue to harm, the goodwill enjoyed by

plaintiffs' Marks in the United States by creating a false association between the genuine services provided by plaintiffs and those associated with defaulting defendants. (Id. ¶ 35.) It appears defaulting defendants have not used the Infringing Domain Names in connection with the sale of goods or services, but are holding the domain names in the hopes that plaintiffs will offer to purchase the names. (Id. ¶ 37.) Defaulting defendants' actions were willful in that they registered the Infringing Domain Names despite their knowledge of the renown of the Citibank and Diners Club names and of the famousness and distinctiveness of the CITI and DINERS CLUB Marks. (Id. ¶ 39.) The actions of defaulting defendants are causing irreparable harm, for which plaintiffs have no adequate remedy at law. (Id. ¶ 53; Mot. for Default J. ¶ 11(v).)

### III. EVALUATION OF PLAINTIFFS' COMPLAINT

Plaintiffs contend that the Infringing Domain Names are confusingly similar to and dilutive of their famous marks and were registered with bad faith intent, in violation of 15 U.S.C. § 1125(d). (See Compl. ¶¶ 54-61.) Plaintiffs seek an order directing the transfer of the registration of the Infringing Domain Names from defendants to plaintiffs, pursuant to 15 U.S.C. § 1125(d)(1)(C).

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are deemed admitted. Before entering default judgment, however, the court must evaluate the

8

plaintiff's complaint to ensure that the complaint properly states a claim. <u>GlobalSantaFe Corp. v. Globalsantafe.com</u>, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate the plaintiff's claim against the standards of Fed. R. Civ. P. 12(b)(6).

The Complaint alleges that registration of the defendant Infringing Domain Names constitutes cyberpiracy under 15 U.S.C. § 1125(d). (Compl. ¶ 59.) The statute sets forth the requisite elements of cybersquatting as follows:

> (d) Cyberpiracy prevention
>
> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>
>> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>>
>> (ii) registers, traffics in, or uses a domain name that–
>>
>>> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>>>
>>> (II) in the case of a mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
>>>
>>> (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d).

First, plaintiffs have sufficiently pled in their Complaint that they have rights in the CITI and DINERS CLUB Marks. Plaintiff Citigroup registered the CITI Marks with the USPTO in 1981. (Compl. ¶ 19.) Plaintiff Diners Club registered the DINERS CLUB Marks with the USPTO in 1967. (Id. ¶ 27.) More importantly, plaintiffs have used the Marks extensively in commerce in the United States and worldwide in connection with their services and have made substantial investments in developing and maintaining the company's reputation and goodwill associated with the Mark. (Id. ¶¶ 22, 30.) As such, plaintiffs have properly pled that they have rights in the CITI and DINERS CLUB Marks that are protected under 15 U.S.C. § 1125(c)(2)(A).

Second, plaintiffs have sufficiently pled that the Marks are at least distinctive, if not famous. "An identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992). "Factors to consider when determining whether a mark has acquired secondary meaning include: (1) advertising expenditures, (2) unsolicited media coverage of the product, (3) sales success, (4) consumer studies linking the mark to the source, (5) attempts to plagiarize the mark, and (6) the length and exclusivity of the mark's use." Venetian Casino Resort, LLC v. VenetianGold.com, 380 F. Supp. 2d 737, 742 (E.D. Va. 2005). Plaintiffs' Complaint establishes

10

support for these various factors, including plaintiffs' extensive advertising use of the Marks and continuous uses of the Marks since 1981 and 1967, respectively.  (See Compl. ¶¶ 19-23, 27-31.)

In addition, plaintiffs' Complaint properly alleges that the Infringing Domain Names are identical or confusingly similar to plaintiff's Mark.  (See id. ¶¶ 33-35 38, 50.)  The confusing similarity standard is satisfied where, as here, the domain name is virtually identical to the plaintiff's mark.  See Agri-Supply Co. v. Agrisupply.com, 457 F. Supp. 23d 660, 663 (E.D. Va. 2006).  The presence of a typographical difference is not sufficient to avoid a finding of confusing similarity.  See, e.g., Green v. Fornario, 486 F.3d 100, 103 n.5 (3d Cir. 2007).

Finally, plaintiffs have sufficiently pled that the Infringing Domain Names were registered in bad faith.  ACPA lists nine, non-exclusive factors a court may consider in determining whether a person has a bad faith intent.[6]  Virtual

---

[6] The statutory factors a court may consider to determine bad faith intent are as follows:
(I)     The trademark or other intellectual property rights of the person, if any, in the domain name;
(II)    The extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
(III)   The person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
(IV)    The person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
(V)     The person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by

Works, Inc. v. Volkswagen of America, Inc., 238 F.3d 264, 269 (4th Cir. 2001).

The facts alleged in plaintiff's Complaint support a finding of bad faith as to the Marks under nearly all nine of the listed factors. With respect to the first factor, defaulting defendants have no intellectual property rights in the Infringing Domain Names, and the domain names do not consist of the legal name of defaulting defendants. (See Compl. ¶¶ 33, 36, 39.) Meanwhile, as discussed above, it is clear plaintiffs have rights in the CITI and DINERS CLUB Marks, with which the

---

the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
(VI) The person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
(VII) The person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
(VIII) The person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
(IX) The extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of section 43 [of the Lanham Act].

15 U.S.C. § 1125(d)(1)(B)(i).

12

Infringing Domain Names are confusingly similar. (Id. ¶ 55.) Indeed, the Infringing Domain Names either consist of the legal name of plaintiffs or contain at least one of plaintiff's trademarks in its entirety. (Id. ¶ 38.)

With respect to the third, fourth, and fifth factors, the Infringing Domain Names have been used in connection with registrants' bad faith, rather than bona fide, offering of goods or services through for-profit websites featuring prominent links to plaintiffs' competitors and online advertising for businesses that directly compete with plaintiffs. (Id. ¶¶ 45, 47.) The Infringing Domain Names have not been used in connection with any legitimate non-commercial use. (Id ¶ 37.) Because the Infringing Domain Names are virtually identical to plaintiffs CITI and DINERS CLUB Marks, plaintiffs' actual and potential customers are likely to be confused and deceived into believing that the Infringing Domain Names are affiliated with plaintiffs. The similarity suggests defaulting defendants have sought to capitalize on this confusion by diverting customers to the pay-per-click website for commercial gain. Moreover, the defaulting defendants' awareness that the Infringing Domain Names may be confused with plaintiffs' Marks is evidence of bad faith. Venetian Casino Resort, 380 F. Supp. 2d at 744. At all times relevant, the defaulting defendants were aware of plaintiffs' Marks; that they were using the Marks in connection with their websites, products, and services; and that

13

plaintiffs' Marks were distinctive and famous. (Compl. ¶¶ 33-36, 39, 51.)

With respect to the eighth factor, defendants registered, without regard to the goods or services of the parties, multiple domain names which they knew, at the time of registration, were identical or confusingly similar to plaintiffs' Marks. Moreover, defendants also knew that plaintiff's Marks were famous when they registered the Infringing Domain Names. (Id. ¶¶ 33, 3.) Moreover, defendants are serial cybersquatters, whose prior conduct indicates a pattern of wrongfully registering domain names designed to infringe on trademarks in order to profit. (See id. ¶¶ 40-41.) Finally, with respect to the ninth factor, as discussed above, plaintiffs' Marks are at least distinctive. Accordingly, the undersigned Magistrate Judge concludes that plaintiffs have established bad faith intent as defined by ACPA.

Because the facts and allegations set forth in plaintiffs' Complaint as a whole sufficiently state a claim for bad faith registration under 15 U.S.C. § 1125(d), the Magistrate Judge recommends that a default judgment be entered in favor of plaintiffs with respect to defaulting defendants Monga and Lead Networks.

## IV. REQUESTED RELIEF

Under 15 U.S.C. § 1125(d)(1)(C), plaintiffs' remedies in this case include forfeiture, cancellation, or transfer of the

14

domain name. Plaintiffs ask to Court to enter an order requiring VeriSign, the registry for the Infringing Domain Names, to transfer the registration of the Infringing Domain Names to plaintiffs.

Additionally, plaintiffs seek an award of statutory damages under 15 U.S.C. § 1117(d), and an award of reasonable attorneys fees pursuant to 15 U.S.C. § 1117(a).

## V. RECOMMENDATION

The undersigned Magistrate Judge recommends that default judgment be entered for plaintiffs with respect to defaulting defendants Monga and Lead Networks for violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). The undersigned Magistrate Judge further recommends that an order be entered directing VeriSign, as the registrar, to transfer registration of Infringing Domain Names wwwdinersclubus.com, wwwcitibankonline.com, and citifin.com to plaintiffs, pursuant to 15 U.S.C. § 1125(d)(1)(C).

After several unsuccessful attempts, plaintiffs effectuated service on defendants Naresh Malik a/k/a Nick M. and Watch My Domain. (Dkt. No. 20.) On January 29, 2009, the Clerk entered default with respect to defendants Malik and Watch My Domain. (Dkt. No. 27.) The Court will reserve judgment regarding plaintiffs' request in the instant Motion for statutory damages and reasonable attorney's fees until these issues can be addressed with respect to all of the served defendants.

15

Lastly, the undersigned recommends that defaulting defendants and their respective agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations and all others in privity or acting in concert with them be permanently enjoined from:

(a) Using, linking to, transferring, selling, exercising control over, or otherwise owning Infringing Domain Names wwwdinersclubus.com, wwwcitibankonline.com, and citifin.com or any other domain name or trademark or service mark that incorporates, in whole or in part, plaintiffs' Marks;

(b) Using false representations or descriptions in commerce or using false designations of origin that are likely to cause confusion, or to cause mistake, as to deceive as to the affiliation, connection, or association of defaulting defendants with plaintiffs, or as to the origin, sponsorship, or approval or defaulting defendants' services by plaintiffs;

(c) Otherwise infringing plaintiffs' Marks; and

(d) Unfairly competing with plaintiffs or otherwise injuring their business reputation in any manner.

## VI. NOTICE

The parties are advised that exceptions to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within ten (10) days of its service. A failure to object to this Report

16

and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

                                                                                    /s/  
                                                THERESA CARROLL BUCHANAN  
                                                UNITED STATES MAGISTRATE JUDGE

February 18, 2009  
Alexandria, Virginia